ISAAC J. LEWIS, Respondent, v. SARAH J. SLACK AND HUSBAND, Appellants.

Kansas City Court of Appeals, June 6, 1887.

1. PRACTICE—PLEADING—ISSUES—INSTRUCTIONS NOT SUBMITTING—CASE ADJUDGED.—Where, as in this case, the petition is predicated on the contract, and avers the performance thereof by the plaintiff, and the answer denied this fact, and there was evidence to sustain the denial, defendant was entitled to go to the jury on this distinct issue. Where the petition is founded on the contract, the plaintiff cannot recover judgment on a *quantum meruit*.

2. PRINCIPAL AND AGENT—CONDUCT OF AGENT AS TO THIRD PARTIES. It is the duty of an agent, in all things relating to his principal, to act solely for his interests, and with fidelity to his employer and

his trust. The law does not recognize, or tolerate, conduct on the part of an agent which is hostile to his principal, and in the interest of an adverse party, with whom he is dealing for his principal.

APPEAL from Jackson Circuit Court, HON. FRANCIS M. BLACK, Judge.

*Reversed and remanded.*

Statement of case by the court.

This is an action by the plaintiff, a contractor, to recover on the following contract, and to enforce a mechanic's lien on the property therein named :

"An agreement of two parts, made this fourteenth day of September, A. D., 1882, by and between I. J. Lewis, contractor, and Mrs. S. J. Slack, owner, witnesseth, that for and in consideration of the sum of money to be paid to the said Lewis by the said Slack, as hereinafter expressed, the said Lewis hereby agrees to build and erect, and turn over to the said S. J. Slack, in good order, on or before the tenth day of December, 1882, a double brick dwelling, the same to be built substantially the same as the dwelling-house of John D. S. Cook, Esq., located on Eighth and Jefferson streets, in the City of Kansas, Mo., with the following additions, viz. : All windows on the east, west, and north sides of said house to have outside blinds ; two coal vaults, to be built of brick or stone, in the immediate front of said house. Two cisterns, seven by twenty (7 x 20), and cemented on sides and bottom, and brick turned over top, to be built in the immediate rear of said house, and the same provided with chain pumps. Also the attic story of said building will be finished according to the plans ; the same to be lathed and plastered, and finished with plain member architraves with 8 A Base and 2-8 x 6, 8 x 1 3-8 O. G. doors, trimmed with Jap butts and black knobs. Also, in addition to the plumbing, there will be a wash-bowl in each attic, directly over

bathroom. The rear wall will be carried up, so as to finish story 8:6 high, and the basement will be 8:6 high. There will be two windows in the kitchens, one of which will be additional, and two dormer windows in front, where circles are now located in the said Cook house. In other respects and details shall conform to the plans of Mr. Cook's house. And it is further agreed, that the said Mrs. S. J. Slack shall have the privilege to make any slight alterations or changes in the construction of the interior of said house by paying, in addition to, or deducting from, the contract price of said building, as the case may be, in proportion to the contract price for like work. And all materials as delivered shall be inspected by L. F. Doane, the architect, agent, and superintendent, appointed by the said S. J. Slack, to erect and build said building, and if said material be not in conformity to that used in the construction of said Cook's house, then the same shall be removed immediately, at the said contractor's expense, and proper and effective materials applied at once. And for the performance of the foregoing, the said S. J. Slack hereby agrees to pay, or cause to be paid, to the said Lewis in installments, as the work progresses, and on certificate of the architect, L. F. Doane, the sum of eighty-three hundred ($8,300) dollars, which sum shall be in full for the performance of the work embraced under the specifications attached hereto. Witness our hands, this day and year above written.

"I. J. LEWIS, [Seal.]
"S. J. SLACK. [Seal.]"

The petition is predicated upon the contract, and avers a full performance thereof by the plaintiff, and the failure of the defendant to keep and perform the same. It alleges, that in addition to the contract price of $8,300, the plaintiff furnished material, and did other work on said building for the defendant amounting to the sum of $1,883.39; that defendant had paid

the sum of $7,974. The petition prays judgment for the balance of $2,159.39.

The defendant Sarah, being a married woman, her husband, Jeremiah B. Slack, is joined as a party defendant.

The answer, after admitting the coverture and contract, and the payment of the sum of $7,974, tendered the general issue as to the other allegations of the petition. It then pleaded, by way of counter-claim, the failure of plaintiff to build the house of the material and in the manner agreed upon, and delay in its completion, and asked damages therefor.

The answer further alleged that the defendant having employed one L. F. Doane, as her architect and agent to superintend the building of said house, and to employ a competent and responsible person as contractor; that said architect, contriving to cheat and defraud her, fraudulently combined and conspired with the plaintiff, by procuring him to enter into the said contract as the ostensible contractor, when, in fact, he was simply the employe and tool of the said Doane, who was the real party in interest as such contractor, and was, in fact, the real party in interest in this suit; that he induced the defendant to believe that he, the said architect, was to act for her as her agent in protecting her interests, when, in fact, said architect was acting for said Lewis, and that this action is really prosecuted for the said Doane, etc.

The contract between the said Doane and defendant is as follows:

"Kansas City, September 14, 1882.

"Witness an agreement and contract entered into this day by and between L. F. Doane and Mrs. S. J. Slack, whereby the said Doane, for and in consideration of two and one-half per cent. commission on building and improvements, to be paid him by the said Mrs. Slack, hereby agrees to furnish all plans, detail plans, and specifications of a two-story brick dwelling, to be

erected for the said Mrs. Slack, on West Seventh street, in the City of Kansas, and also to superintend the construction of said dwelling, and faithfully serve and perform the duty of architect, agent, and superintendent of said dwelling, and to see to it that the same be built in strict conformity to the specifications and plans of said house ; and further guarantee to see that all bills that are just claims, be paid, both labor and material bills, and to see that no liens exist or can exist, upon said house by reason of contract default of I. J. Lewis, the contractor for said house, and also to see that said building is turned over in good condition ; and for the performance of the foregoing the said S. J. Slack hereby agrees to pay, or cause to be paid to the said Doane, the sum of two and one-half per cent., as per architect rules, instituted by the American Board of Architects, as follows : One hundred and three and seventy-five hundredths dollars on the acceptance of the plans and specifications, and the balance at the completion and acceptance of the work.

"Witness our hands.

"L. F. DOANE."

The plaintiff offered evidence tending to show a performance of the contract on his part ; also that he performed additional work and furnished additional material, in the way of alterations and the like of the original plans and specifications, and gave evidence as to the reasonable value thereof.

The defendant's evidence tended to show that, in many material particulars, the material furnished, and the workmanship, failed to come up to the requirements of the contract, and that the same were defective and deficient. The defendant also offered evidence tending to sustain the allegations of the petition, that the architect did not serve her as such agent, with the fidelity and honesty his office as such agent and supervisor required of him, and that he acted rather for the contractor, and was active in prosecuting this action against her.

On this state of the proofs the court, against the objections of defendant, among others, gave the following instructions to the jury:

"If you find that the plaintiff did furnish the materials and construct the house in compliance with the contract, plans, and specifications, then he is entitled to have allowed to him the full contract price therefor. If, on the other hand, you find that the plaintiff failed to do the work in question, in compliance with said contract, plans, and specifications, then you will allow him for the work, as actually done, what the same was reasonably worth, estimating the work as done on the basis that if done as agreed in said contracts, the same would have been of no greater value than the contract price therefor."

"If you find, from the evidence, that Mrs. Slack did authorize or direct additional and extra work to be done, from that agreed on in the plans, specifications, and contract before referred to, then for all such extra work done, and materials furnished by the plaintiff, he is entitled to have, and you should allow to him therefor, what the same was reasonably and fairly worth. Where changes only were made, you will allow the plaintiff the difference in the value of doing the work as done and as agreed to be done, taking into consideration the time when the change was directed, how far the work had progressed, and the work, if any, to be done over, on account of the change."

"The defendant entered into a contract with the architect, whereby he agreed to protect her in her contract with the plaintiff, and the architect had a right to receive the money from her and pay the same out to laborers, material men, and sub-contractors, and to supervise the letting of sub-contracts and employment of men. The architect, by virtue of his position as architect and superintendent alone, whether otherwise than as above stated, interested in the plaintiff's contract or not, had no right to direct extra work to be done. It

is only such extra work as the defendant directed to be done, or authorized the architect to have done, after the original contract with plaintiff was made, or such as was done with her knowledge and consent, knowing that it was extra work, that she is to be charged with, but for all such extra work she is to be charged."

The court refused to instruct, as requested by the defendant, to the effect that, as the action was based on the contract, alleged to have been kept and performed by the plaintiff, he could not recover unless he had shown a compliance with its material terms, and that if he had failed to furnish the materials or perform the work, in any substantial particular, according to the contract, as in the matter of the stone, brick, plastering, and plumbing, he could not recover.

The jury returned a verdict for the plaintiff in the sum of $1,070. The court rendered judgment accordingly, and enforced the mechanic's lien against the property. Defendant has appealed.

CHASE & POWELL and W. C. STEWART, for the appellants.

I. The court should have given the jury instruction numbered one, asked by the defendants. Plaintiff sued on a special contract, which he alleges was executed by himself and defendant, Sarah J. Slack, as set out in the petition, in legal effect, and filed with the petition, of which he averred complete performance on his part, and asked that she be compelled to perform her part. Defendants, by their first instruction, asked that the jury be informed that the plaintiff, having based his right of recovery on a special contract, in order to recover on it, must first show, by the evidence, that he had first performed his part, otherwise he could not recover on his demand, as pleaded. The Supreme Court of this state, say, in the case of *Eyerman v. Cemetery Association* (61 Mo. 489), "The established rule deduced from all the cases is, that if a party fail to perform his

part according to the stipulations of his agreement, he cannot recover on the special contract." And when plaintiff's petition declares only on the contract, he cannot recover on his *quantum meruit.*

II. The court should have given instruction numbered two, asked by defendants. The plaintiff did not comply with his alleged contract.

III. The court erred in refusing to give instruction numbered six, asked by defendants. It was for the jury to say, on the evidence, as to what the fact was concerning the good faith of the agent to his principal.

IV. The court erred in refusing to give instruction numbered seven, asked by defendants. The principal contracts for the skill and judgment of the agent. Hence, the law does not permit him, when his duty requires him to act for the principal, to act for his own exclusive benefit. 3 Suth. on Dam., p. 2. An agent can accept no inconsistent employment, nor act for his own benefit to the injury of his principal. No agent shall be allowed to place himself in a position where his duty and his interest will conflict. *Rea v. Chapelin,* 47 Mo. 77. Agency for both parties makes the contract voidable. 20 Barb. [N. Y.] 468. Hence, the court should have instructed the jury, as requested, that Mrs. Slack could not be held liable for Doane's doings, as her agent, after he had gone over to Lewis ; at most, she could not, when his acts were, or might be, used as proof in Lewis' favor, or his (Doane's) own interest either.

V The court erred in giving instruction numbered five of his own motion. In this instruction, the court ignores all the evidence tending to show that the plaintiff, Lewis, was, as charged by the defendants, Sarah J. and Jeremiah B. Slack, in their answer, and as much evidence herein quoted from the transcript, and more not quoted, shows a mere nominal party placed by fraud and collusion into the contract which Mrs. Slack had entrusted her agent, Doane, to draw and make with

some contractor for her, and placed there by her agent, Doane, intentionally, and to the end that Lewis, defendant, would appear to be her contractor, and thus making Doane at once contractor and superintendent of the contractor's work, with power to pass upon the performance and quality thereof, and bind his principal by his own decision, made in his own behalf, when the court should have left it to the jury to have said, upon all the evidence, whether the contract thus made by Doane, as the agent of Mrs. Slack, was the result of a conspiracy or fraudulent combination with Lewis, and, therefore, not binding on Mrs. Slack; and hence a contract that could not be enforced against her by law. In the last clause of said instruction, the court ignored the fact that plaintiff had declared upon the alleged special contract between himself and the defendant, Mrs. Slack, and instructed the jury, in case they found the plaintiff had not performed his part of the contract, as he alleges, in his petition, he had, that they might allow him what the material he had furnished and the work he had done was worth; precisely what the Supreme Court, of this state, in a well-considered case, have said he could not do. *Eyerman v. Cemetery Ass'n, supra.*

VI. The court erred in giving instruction numbered seven of its own motion. It is, under the evidence, and with the issues involved in this case, at the least, misleading and liable to prejudice defendants.

VII. The court erred in permitting the witness, Owens, whom the evidence shows was asked to look at the building, and see if the extra charges were proper, under the contract and specifications, and who swore that he went and looked at the building, and afterward read the specifications and made a memorandum, in part, from the plaintiff's bill of extra charges, and, part from memory, to read it as evidence to the jury. *Rea v. Boardman*, 20 Pick. —; *Clark v. Reglin*, 4 Ship. 246; Elwell on Mal. Prac. 270.

J. D. S. COOK and HENRY WOLLMAN, for the respondent.

I.   Where a builder fails to comply with his contract in every particular, he may nevertheless recover the reasonable value of his work. *Austin v. Keating,* 21 Mo. App. 34; *Eyerman v. Hospital,* 61 Mo. 489; *Yeats v. Ballentine,* 56 Mo. 539.

II.   This case was tried upon the proper theory, evidence introduced and instructions given under the proper construction of the law; and this court will not reverse because of technical errors or technical defects in the pleadings, unless error manifestly prejudicial to appellant has been committed. *Burns v. Peck,* 17 Mo. App. 588; *Bank v. O'Connell,* 23 Mo. App. 166; *Newberger v. Friede,* 23 Mo. App. 631; *Fell v. Mining Co.,* 23 Mo. App. 217; 20 Mo. App. 232; *Brown v. Railroad,* 20 Mo. App. 427.   A defective statement of a cause of action is cured by verdict. *O'Connor v. Theater Co.,* 17 Mo. App. 675.

III.   Although a petition may be defective, yet if it appears, after verdict, that judgment could not have been rendered without proof of the matter omitted the defect will be cured. *Jones v. Lauderman,* 39 Mo. 290.

IV.   If we sued on special contract, and introduced evidence under a *quantum meruit,* the most that can be claimed is that there was a variance between pleading and proof.   Such variance will be deemed waived unless an affidavit of surprise be filed, compelling plaintiff to amend.   Appellate courts will pay no attention to variances unless an affidavit of surprise be filed.   Rev. Stat., sect. 3565; 68 Mo. 626; 55 Mo. 353; *Hoyt v. Quinn,* 20 Mo. App. 72; *Hollfield v. Black,* 20 Mo. App. 329.

V.   It is never error to refuse an instruction, where the point is already covered by another instruction.

VI.   A party in whose name alone a contract is

made, may sue without joining others interested with him therein. Rev. Stat., sect. 3463.

VII. Owens was called in by both parties to look over the work in the house, and had the right to use the memorandum to refresh his memory. 1 Greenl. on Evid., sect. 456.

PHILIPS, P. J.—No rule of law is better settled in this state than that, in a case like this, where the petition is founded on the contract, the plaintiff cannot recover judgment as on a *quantum meruit*. *Eyerman v. Cemetery Ass'n*, 61 Mo. 489. It is unnecessary to multiply authorities on this point, or to discuss the wisdom of the rule. It is enough to say that it is the well-settled law of this state, as announced by the Supreme Court, and we are bound by it.

The petition, in this case, is predicated on the contract, and avers the performance thereof by the plaintiff. The answer denied this fact. And the defendant's evidence entitled him to go to the jury on this distinct issue. The court refused to so instruct the jury. On the contrary, the court, in direct terms, authorized the jury to find for the plaintiff, as on a *quantum meruit*. In this the court erred, and its judgment must be reversed.

The contract also provides that for any slight changes made in the construction of the interior of the house, the plaintiff may be entitled to pay, if the cost of the change or alteration exceeds the construction according to the plans and specifications. But it further provides that the sum to be so paid shall be "in proportion to the contract price for like work." So that no *quantum meruit*, in this action, can be allowed for such slight change, as the amount to be charged therefor is to be regulated and ascertained by its relation to the like work under the contract.

I. The appellant assigns for error the action of

the trial court in permitting the witness, Owens, to read to the jury a *memorandum* made by him respecting some examination of the building made by him as an expert. As this evidence is not set out in the abstract of the record furnished by the appellant, in conformity with the rules of this court, we cannot pass on this question. It is given by counsel merely in the form of a statement by him, and not by setting out the evidence as it occurred at the trial.

II. It is also assigned for error that the court instructed the jury that under the contract of employment between the architect and the defendant, the architect "had a right to receive the money from her, and pay the same out to laborers, material men, and sub-contractors, and to supervise the letting of sub-contracts and employment of men."

I am of opinion that the instruction in this form should not have been given. I discover nothing in the contract which would authorize the architect to take away from the owner the right to pay out her own money. It was the duty of the architect to see, as far as he could, by the exercise of reasonable care and diligence, that the contractor paid off his hands, and paid for the material which went into the building; but it would be going far to say, from the contract, that he could take upon himself to pay whom he pleased, and what he pleased, and then hold the owner of the building therefor. There is nothing in the contract which authorized him to handle the defendant's money, or become the disbursing agent. The defendant's contract with Lewis obligated her to pay the money to him. It was his contract, and he was the party she was to pay, by the terms of the contract, for the erection of the building, and not the architect, unless it was upon the admission that the architect was the real party in interest, a fact which I presume he would not willingly concede on this trial. As it was the undertaking of the architect to guard his employer against liens, it con-

cerned him to see that the money paid out was not withheld by the contractor from the payment of laborers and material men; and whether in any payments made by Doane, he was actuated in protecting the interests of his employer, or was acting on his own behalf, as a secret party to the contract, was a question of fact for the jury. It was to give the conduct of this architect the semblance of right, conferred upon him by the defendant, to instruct the jury that he "had the right to receive the money from her." It, in effect; withdrew from the jury the issue and question of the good faith and honesty of this man, in serving his principal.

Nor is there anything in the contract which authorized him, as the instruction declares, "to supervise the letting of sub-contracts, and the employment of men." The contract simply required him to "superintend the construction of said dwelling, and faithfully serve and perform the duty of architect, agent, and superintendent of said dwelling, and see to it that the same be built in strict conformity to the specifications and plans." This was the extent of his authority.

In other words, the plain meaning of it all is, the architect was to act solely for the owner of the property, to see that the contractor performed his contract according to the plans and specifications. He was not to take upon himself the office of the contractor, to buy materials, hire and discharge hands and workmen, thereby relieving the contractor from his obligation under the contract. For, if the architect should do all this, the owner could not hold the contractor responsible for any defective material or bad workmanship, because her own agent had selected and approved it, and the contractor had no voice in it. The defendant did not contract with the architect to build her house. He was employed by her to see that Lewis built it according to contract, and that she was protected against liens. Instead of the architect so acting in this matter, with fidelity to his employer and his trust, the evidence tends to show that

he was selecting and furnishing material, employing and paying hands, and acting rather as if it were his own contract. And instead of looking solely after the interests of his employer, as her agent, he is most active in this prosecution, busy in bringing the suit, and standing by the contractor. The law does not recognize or tolerate such conduct, on the part of an agent, and especially one standing in the relation this architect did to the defendant.

III. We see no valid objections to the instructions given by the court on other matters at issue.

The judgment of the circuit court is reversed, and the cause remanded for further proceeding, in conformity with this opinion. All concur.

